**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| E. ROD DAVISSON, *et al.*, : | |
| : | Case No. 2:13-CV-00456 |
| **Plaintiffs,** : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | **Magistrate Judge King** |
| **FORD MOTOR COMPANY,** : | |
| : | |
| **Defendant.** : | |

## OPINION & ORDER

This matter is before the Court on Defendant Ford Motor Company's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (Doc. 31). Defendant seeks to dismiss the case in its entirety, on the grounds that Plaintiffs have failed to meet the standards of pleading required by Fed. R. Civ. P. 8(a) & 9(b), and because the Amended Complaint fails to state claims for relief under the various state-law claims for relief.

For the reasons set forth herein, Defendant's Motion is **GRANTED**.

### I. BACKGROUND

This case centers on Defendant Ford Motor Company's 3.5-liter V6 "EcoBoost" engine, a twin-turbocharged gasoline internal combustion engine utilizing direct-injection and variable valve timing ("the Engine").[1] Plaintiffs, 26 individuals who have purchased or leased Ford vehicles equipped with the Engine, bring suit on behalf of themselves and other members of a purported nationwide class of "all [] current and former owners or lessees of vehicles manufactured by Ford that are equipped with [the Engine]." (*Pls' Resp.*, Doc. 35 at 25-26; *Am. Compl.*, Doc. 16, ¶ 1). These vehicles are the 2010-2013 Lincoln MKS, 2010-2013 Lincoln

---

[1] Ford also manufactures other engines utilizing EcoBoost technology, including a 1.0-liter inline three-cylinder engine, 1.5-liter, 1.6-liter, and 2.0-liter inline four-cylinder engines, and a 2.7-liter V6 engine. *See* http://en.wikipedia.org/wiki/Ford_EcoBoost_engine, *last accessed* Sept. 2, 2014. These engines are not part of this litigation.

MKT, 2010-2013 Ford Flex, 2010-2013 Ford Taurus SHO, 2011-2013 Ford F-150, and 2013 Ford Explorer Sport (the "Class Vehicles"). (*Am. Compl.*, ¶ 8).

Plaintiffs allege that Ford promoted its EcoBoost technology as providing increased fuel efficiency without sacrificing performance, and advertised EcoBoost engines as functioning reliably in extreme conditions. (*Id.*, ¶¶ 2-3, 118-33). According to Plaintiffs, however, "[a]ctual driver experiences have been dramatically different," with "[h]undreds" of drivers reporting that vehicles equipped with the engine are "prone to shuddering, shaking, stumbling, misfiring, rapidly losing power, or improperly going into 'limp mode,'" particularly in situations involving heavy rain or humidity. (Doc. 35 at 26-27; *Am. Compl.*, ¶¶ 4-5, 134, 139-40).

Investigations to date, Plaintiffs explain, have indicated that the issue likely arises from moisture entering the Engine via condensation that forms inside the tubes of the "Charge Air Cooler" or "intercooler," a radiator-like component which cools intake air after it has been compressed (and heated) by the turbochargers, before it enters the combustion chambers. (*Am. Compl.*, ¶ 5). Ford has issued four "Technical Service Bulletins" ("TSBs") to its dealerships and internal departments mentioning this problem, designated TSB 12-6-4, TSB 12-10-19, TSB 13-3-3, and TSB 13-8-1. (*Id.*, ¶¶ 6, 141-48). These TSBs were issued on June 4, 2012, October 30, 2012, March 18, 2013, and August 5, 2013, respectively. (*Id.*, ¶¶ 141-45). According to one internal update, Ford is still "investigating [the problem's] cause and solution." (*Id.*, ¶¶ 7, 146). Furthermore, Plaintiffs allege that Ford had knowledge of the potential problem in the Engine, as evidenced by TSBs 11-8-19, 11-5-3, and 10-17-10, regarding Ecoboost engines "running rough, hesitating, and shuddering," which were issued in 2010 and 2011 and predate the introduction of the Engine into 2011 and 2012 F-150 models. (*Id.*, ¶ 156).

On May 22, 2013, the United States Department of Transportation, National Highway Traffic Safety Administration ("NHTSA") opened an investigation into this issue, with respect to 2011-2013 Ford F-150 trucks equipped with the Engine. *See* ODI Resume, PE 13-018 (May 22, 2013).[2]  After investigation and comment from Ford, NHTSA found that, during hard acceleration with "near wide-open throttle," the accumulated condensation in the Charge Air Cooler could be ingested into the engine.  When the amount of this water exceed the Engine's operating threshold for water ingestion, the powertrain software "would disable up to two of the misfiring cylinders for no more than 30 seconds," in order to protect the catalytic converter from damage.  *Id.* at 1.  In light of the results of its investigation, and Ford's reports of its attempts at addressing the issue, NHTSA concluded that "further use of the agency resources in this matter d[id] not appear to be warranted"; the investigation was closed, without a finding that a safety-related defect does or does not exist, on April 7, 2014.  (*Id.* at 1-2).[3]

At roughly the same time as NHTSA was investigating these claims, Plaintiffs initiated this action against Ford.  Plaintiffs filed their Complaint on May 10, 2013 (Doc. 2), with their Amended Complaint filed three months later, on August 16, 2013 (Doc. 16).  Each of the 26 named Plaintiffs owns a Class Vehicle, purchased from various Ford dealerships in 18 states.  Each Plaintiff alleges that various representations and advertisements put forward by Ford enticed them to make their purchase.  And each Plaintiff alleges that he or she has experienced "some or all of the telltale signs of the defective EcoBoost Engine."  (Doc. 35 at 27).

---

[2] The Court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008); *see also Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (On a motion to dismiss, "[j]udicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper.").

[3] In light of NHTSA's closure of its investigation, Defendant has withdrawn its argument that this case should be stayed or dismissed pursuant to the primary jurisdiction doctrine.  (Doc. 43 at 1).  Accordingly, the Court will not address this issue.

For example, Plaintiffs Jennifer Angela Davisson and E. Rod Davisson, residents of Ohio, own a 2010 Ford Taurus SHO and a 2012 Ford F-150, respectively. (*Am. Compl.*, ¶¶ 13-14). Both purchased their vehicles from Ricart Ford in Columbus, Ohio, at an unspecified date. (*Id.*). According to the Davissons, the Taurus SHO

> is subject to sudden shuddering, shaking, rapid loss of power, and improper transition to limp mode. Ford knew about, but did not disclose, the defect to Mrs. Davisson, so Mrs. Davisson purchased her Taurus SHO under the reasonable but mistaken belief that her vehicle would be safe and reliable. Since Mrs. Davisson purchased her Taurus SHO, she has experienced a lack of power, sputtering, and improper transition to limp mode when she has attempted to accelerate.

(*Id.*, ¶ 13). Similarly, Plaintiffs assert that the 2012 F-150 has experienced the exact same malfunction. (*Id.*, ¶ 14). Plaintiffs also allege that Ricart Ford "has attempted a number of times to repair Mrs. Davisson's Taurus SHO based upon the available TSBs to no avail. At this point, she fears for her and her family's safety every time she drives her Taurus." (*Id.*, ¶ 16).

The Davissons insist that they saw advertisements for the Engine, including on television, via print media, and in brochures, and "[a]lthough [they] cannot recall the specifics of the many Ford advertisements and other publications they saw before they purchased their [vehicles], they recall that safety and reliability were frequent elements," and they "specifically recall[] viewing a commercial touting the EcoBoost Engine's introduction into the F-150 as a powerful and reliable alternative to a standard gasoline engine." (*Id.*, ¶¶ 18-19). Thus, the Davissons "expected that the vehicles they purchased were safe and reliable. Had those advertisements and any other materials viewed by Mr. and Mrs. Davisson disclosed that the vehicles could suddenly shudder, shake, stumble, misfire, rapidly lose power, and improperly transition to limp mode, they would not have purchased the Taurus SHO or the F-150 with the added EcoBoost technology, or certainly would not have paid as much for their vehicles as they did." (*Id.*, ¶ 19). The Davissons

4

allege that they suffered injury "because they paid more for their Taurus SHO and F-150 than they should have," since their purchase price was "based upon the value of a vehicle free from defects." (*Id.*).

Plaintiffs claim they gave notice to Ford "by presenting their Taurus SHO at an authorized Ford dealership for repairs," as well as "by a letter dated August 16, 2013, to Ford on behalf of Mr. and Mrs. Davisson, and other Plaintiffs," the same day the Amended Complaint was filed, and "through this Complaint." (*Id.*, ¶ 17).

Plaintiffs' Amended Complaint contains similar allegations, in nearly identical language, for the other 24 Plaintiffs. For the sake of clarity, the Court summarizes the various Plaintiffs and causes of action:

| **Plaintiff** | **Vehicle** | **State** | **Cause(s) of Action** | **Complaint ¶¶** |
|---|---|---|---|---|
| [All Plaintiffs] | | | Magnuson-Moss Federal Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, | 170-183 |
| Jennifer Angela Davisson | 2010 Ford Taurus SHO | Ohio | [General factual allegations] | 13-19 |
| | | | Ohio I – Ohio Consumer Sales Practices Act, O.R.C. §§ 1345.01, *et seq.* | 184-195 |
| | | | Ohio II – breach of express warranty, O.R.C. § 1302.26 | 196-205 |
| | | | Ohio III – breach of implied warranty in tort | 206-211 |
| | | | Ohio IV – negligence | 212-216 |
| | | | Ohio V – breach of contract | 217-221 |
| E. Rod Davisson | 2012 Ford F-150 | Ohio | [See *supra*] | [See *supra*] |
| David Todd Sammons | 2011 Ford F-150 | Alabama | [General factual allegations] | 20-23 |
| | | | Alabama I – breach of express warranty, Ala. Code § 7-2-313 | 222-237 |
| | | | Alabama II – breach of implied warranty of merchantability, Ala. Code § 7-2-314 | 238-245 |
| | | | Alabama III – breach of contract/common law warranty | 246-250 |

5

| | | | Alabama IV – fraud by concealment | 251-260 |
|---|---|---|---|---|
| Joshua Adam Frey | 2012 Ford F-150 | Arkansas | [General factual allegations] | 24-27 |
| | | | Arkansas I – Arkansas Products Liability Act, Ark. Code §§ 16-116-101, *et seq.* | 261-272 |
| | | | Arkansas II – implied warranty of merchantability, Ark. Code § 4-2-314 | 273-278 |
| | | | Arkansas III – negligence | 279-287 |
| | | | Arkansas IV – negligent misrepresentation | 288-297 |
| Michael Drury | 2011 Ford F-150 | California | [General factual allegations] | 28-31 |
| | | | California I – California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* | 298-320 |
| | | | California II – California Unfair Competition Law, Cal. Bus. & Prof. Code, §§ 17200, *et seq.* | 321-329 |
| | | | California III – California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* | 330-337 |
| | | | California IV – Breach of implied warranty of merchantability, Cal. Com. Code. § 2314 | 338-345 |
| | | | California V – Breach of contract/common law warranty | 346-350 |
| | | | California VI – fraud by concealment | 351-361 |
| | | | California VII – Song-Beverly Consumer Warranty Act, Cal. Civ. Code. §§ 1791.2 & 1793.2(d) | 362-376 |
| | | | California VIII – Song-Beverly Consumer Warranty Act, Cal. Civ. Code. §§ 1791.1 & 1792 | 377-390 |
| Alfred Matthew Kendall | 2012 Ford F-150 | California | [General factual allegations] | 32-35 |
| | | | [See *supra*] | [See *supra*] |
| Robert Allen Marshall | 2012 Ford F-150 | California | [General factual allegations] | 36-40 |
| | | | [See *supra*] | [See *supra*] |
| David Valentine Jowett | 2012 Ford F-150 Lariat | Delaware | [General factual allegations] | 41-44 |
| | | | Delaware I – Delaware Consumer Fraud Act, 6 Del. Code. §§ 2513, *et seq.* | 391-399 |
| | | | Delaware II – Delaware | 400-409 |

6

| | | | | |
|---|---|---|---|---|
| | | | Deceptive Trade Practices Act, 6 Del. Code §§ 2532, *et seq.* | |
| | | | Delaware III – Breach of express warranty, 6 Del. Code § 2-313 | 410-425 |
| | | | Delaware IV – Breach of implied warranty of merchantability, 6 Del. Code § 2-314 | 426-432 |
| | | | Delaware V – Breach of contract/common law warranty | 433-437 |
| Michael Dayton Hodgdon | 2012 Ford F-150 XLT | Florida | [General factual allegations] | 45-48 |
| | | | Florida I – Florida Deceptive & Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* | 438-448 |
| | | | Florida II – Breach of express warranty, Fla. Stat. § 672.313 | 449-463 |
| | | | Florida III – Breach of contract/common law warranty | 464-468 |
| | | | Florida IV – Fraud by concealment | 469-477 |
| Louis Gregory Rupp | 2012 Ford F-150 SuperCrew | Indiana | [General factual allegations] | 49-52 |
| | | | Indiana I – Indiana Deceptive Consumer Sales Act, Ind. Code. § 24-5-0.5-3 | 478-487 |
| | | | Indiana II – Breach of express warranty, Ind. Code. § 26-1-2-313 | 488-503 |
| | | | Indiana III – Breach of implied warranty of merchantability, Ind. Code. § 26-1-2-314 | 504-510 |
| | | | Indiana IV – Breach of contract/common law warranty | 511-515 |
| | | | Indiana V – Fraudulent concealment | 516-527 |
| Christopher Casey Bishop | 2013 Ford F-150 | Louisiana | [General factual allegations] | 53-58 |
| | | | Louisiana I – Louisiana Products Liability Act, La. Rev. Stat. §§ 9:2800.51, *et seq.* | 528-535 |
| | | | Louisiana II – Redhibition, La. Civ. Code Art. 2520, *et seq.*, & 2545 | 536-544 |
| Jody Troy Mire | 2012 Ford F-150 | Louisiana | [General factual allegations] | 57-59 |
| | | | [See *supra*] | [See *supra*] |
| John Nette, Jr. | 2012 Ford F-150 | Louisiana | [General factual allegations] | 60-62 |
| | | | [See *supra*] | [See *supra*] |
| Robert Joseph Gange | 2011 Ford F-150 | Massachusetts | [General factual allegations] | 63-66 |
| | | | Massachusetts I – Massachusetts Consumer | 545-550 |

| | | | | |
|---|---|---|---|---|
| | | | Protection Act, Mass. Gen. Laws Ch. 93A | |
| | | | Massachusetts II – Breach of express warranty, Mass. Gen. Laws Ch. 106, § 2-313 | 551-566 |
| | | | Massachusetts III – Breach of implied warranty of merchantability, Mass Gen. Laws Ch. 106, § 2-314 | 567-573 |
| | | | Massachusetts IV – Breach of contract/common law warranty | 574-578 |
| Michael Huerta | 2011 Ford Taurus SHO | Michigan | [General factual allegations] | 67-70 |
| | | | Michigan I – Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901, *et seq.* | 579-597 |
| | | | Michigan II – Breach of express warranty, Mich. Comp. Laws § 440.2313 | 598-603 |
| | | | Michigan III – Breach of implied warranty of merchantability, Mich. Comp. Laws § 440.2314 | 604-614 |
| Joshua Merrier | 2012 Ford F-150 | Minnesota | [General factual allegations] | 71-75 |
| | | | Minnesota I – Minnesota False Statement in Advertising Statute, Minn. Stat. §§ 325F.67, *et seq.* | 615-623 |
| | | | Minnesota II – Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43, *et seq.* | 624-629 |
| | | | Minnesota III – Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68, *et seq.* | 630-638 |
| | | | Minnesota IV – Fraudulent misrepresentation and fraudulent concealment | 639-649 |
| | | | Minnesota V – Breach of express warranty, Minn. Stat. § 325G.19 | 650-658 |
| | | | Minnesota VI – breach of implied warranty of merchantability, Minn. Stat. § 336.2-314 | 659-664 |
| | | | Minnesota VII – Strict liability (design defect) | 665-673 |
| | | | Minnesota VIII – Strict liability (failure to warn) | 674-685 |
| Joseph Gildewell | 2012 Ford F-150 | Mississippi | [General factual allegations] | 76-79 |
| | | | Mississippi I—Mississippi Products Liability Act, Miss. Code §§ 11-1-63, *et seq.* | 686-697 |

8

| | | | | |
|---|---|---|---|---|
| | | | Mississippi II – Breach of implied warranty of merchantability, Miss. Code. § 75-2-314 | 698-702 |
| | | | Mississippi III – Negligence | 703-711 |
| | | | Mississippi IV – Negligent misrepresentation | 712-721 |
| Thomas Clem Piguet, Sr. | 2012 Ford F-150 | Missouri | [General factual allegations] | 80-83 |
| | | | Missouri I – Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.* | 722-730 |
| | | | Missouri II – Breach of express warranty, Mo. Rev. Stat. § 400.2-313 | 731-746 |
| | | | Missouri III – Breach of implied warranty of merchantability, Mo. Rev. Stat. § 400.2-314 | 747-754 |
| | | | Missouri IV – Breach of contract/common law warranty | 755-759 |
| | | | Missouri V – Fraud by concealment | 760-769 |
| George Nohai | 2010 Lincoln MKT | New York | [General factual allegations] | 84-87 |
| | | | New York I – Deceptive Acts or Practices, N.Y. Gen. Bus. Law § 349 | 770-779 |
| | | | New York II – False Advertising, N.Y. Gen. Bus. Law § 350 | 780-787 |
| | | | New York III – Fraud by concealment | 788-796 |
| W. Bert Hunn | 2012 Ford F-150 | Oregon | [General factual allegations] | 88-92 |
| | | | Oregon I – Oregon Unlawful Trade Practices Act, Ore. Rev. Stat. §§ 646.605, *et seq.* | 797-808 |
| | | | Oregon II – Breach of implied warranty of merchantability | 809-815 |
| | | | Oregon III – Fraud by concealment | 816-825 |
| Deborah Hunn | 2012 Ford F-150 | Oregon | [General factual allegations] | 88-92 |
| | | | [See *supra*] | [See *supra*] |
| Justin Goodman | 2012 Ford F-150 | Texas | [General factual allegations] | 93-96 |
| | | | Texas I – Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.* | 826-836 |
| | | | Texas II – Breach of express warranty, Tex Bus. & Com. Code § 2.313 | 837-852 |
| | | | Texas III – Breach of implied warranty of merchantability, Tex. Bus. & Com. Code § 2.314 | 853-859 |
| | | | Texas IV – Breach of | 860-864 |

9

| | | | | |
|---|---|---|---|---|
| | | | contract/common law warranty | |
| | | | Texas V – Fraud by concealment | 865-874 |
| Kristin Anastasia Goodman | 2012 Ford F-150 | Texas | [General factual allegations] | 93-96 |
| | | | [See *supra*] | [See *supra*] |
| Michael David McBee | 2012 Ford F-150 | Texas | [General factual allegations] | 97-100 |
| | | | [See *supra*] | [See *supra*] |
| Gerald Arthur Macy | 2011 Ford F-150 FX4 | Vermont | [General factual allegations] | 101-105 |
| | | | Vermont I – Vermont Consumer Fraud Act, Vt. Stat. Tit. 9, §§ 2451, *et seq.* | 875-884 |
| | | | Vermont II – Breach of express warranty, Vt. Stat. Tit. 9A, § 2-313 | 885-900 |
| | | | Vermont III – Breach of implied warranty of merchantability, Vt. Stat. Tit. 9A § 2-314 | 901-907 |
| | | | Vermont IV – Breach of contract | 908-912 |
| Steve Fitzgerald | 2012 Ford F-150 | Virginia | [General factual allegations] | 106-109 |
| | | | Virginia I – Virginia Consumer Protection Act, Va. Code §§ 59.1-196, *et seq.* | 913-928 |
| | | | Virginia II – Breach of implied warranty of merchantability, Va. Code § 8.2-314 | 929-936 |
| | | | Virginia III – Fraud by concealment | 937-949 |

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)

10

(citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In addition, Federal Rule of Civil Procedure 9(b) requires that "in any complaint averring fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). The requirement "reflects the rule-makers' additional understanding that, in cases involving fraud or mistake, a 'more specific form of notice' is necessary to permit a defendant to draft a responsive pleading." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (citation omitted). The Sixth Circuit has explained that to satisfy Rule 9(b), a plaintiff must at a minimum "allege the time, place, and content of the alleged misrepresentation" as well as "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (internal citations omitted). Plaintiffs may plead fraud based "upon information and belief," but the complaint "must set forth a factual basis for such belief, and the allowance of this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations*.*" *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006) (internal quotations omitted).

A complaint's failure to comply Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6). *United States ex rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 976 (S.D. Ohio 2007).

### III.   ANALYSIS

Although Plaintiffs' Amended Complaint fills over 200 pages, their theory of this case is simple to state. Plaintiffs allege that Ford sold vehicles that were "defective at the point of sale," thereby breaching its various warranties and committing other alleged violations of state law. (Doc. 35 at 35). Because each vehicle was allegedly defective when sold, and because each vehicle was sold no more than four years ago (the length of time of the relevant statutes of limitations, according to Plaintiffs), "[t]he precise point in time when these defects first impaired the Class Vehicle[s'] operation is irrelevant." (*Id.*).

Indeed, Plaintiffs maintain that they have stated their causes of action succinctly and efficiently: they need not provide specific dates, points of sale, VINs, contracts at issue, or places of repair, since all such information is already within Ford's control (via its databases related to sales, repairs, and inventory) and since the information is unnecessary in order to clear the low bar set by Fed. R. Civ. P. 8(a). (Doc. 35 at 31-36). Rather, Plaintiffs insist that they have adequately explained that they each purchased vehicles containing the Engine, within the last four years, from authorized Ford dealerships, which were defective at the time of sale, and that "Ford has found no effective repair for the defective EcoBoost Engine." (*Id.* at 36-37). Plaintiffs argue that Ford's focus on the latter part of the Amended Complaint, where they recite the elements of the various causes of action brought in this case, is misplaced, since it is the earlier paragraphs, specifically paragraphs 1-169, that supply the factual core of their claims. (*Id.* at 37). Further, Plaintiffs assert that their various allegations that individual Plaintiffs "saw advertisements for and representations about Ford's 3.5-liter V6 EcoBoost Engine," or "recalled

viewing Ford-produced videos on YouTube which touted the fuel economy, safety, and reliability of the F-150 EcoBoost Engine" are sufficient to support their causes of action. (*Id.* at 38) (quoting *Am. Compl.*, ¶¶ 22-23, 43-44).

But Plaintiffs' simplistic argument glosses over the serious deficiencies in their voluminous Amended Complaint: both in theory and in execution, Plaintiffs have fallen far short of what is required to plead their claims.

### A. Rule 8(a)

As the Supreme Court has made clear, although Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff is required to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A claim succeeds in being "plausible on its face," *id.* at 570, when it contains sufficient factual content to "allow the court to draw reasonable the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is, the Court has made clear, "not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* It is not enough that a complaint "tender[] 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Yet mere probabilities, coupled with recitals of the elements of numerous causes of action and breathless legal conclusions, are precisely what Plaintiffs have offered here. Although Plaintiffs direct Defendant, and this Court, to their allegations in paragraphs 1-169 of the Amended Complaint, these allegations offer little to support Plaintiffs' claims. Plaintiffs fail

13

to allege: (1) the date each vehicle was purchased or leased; (2) the date(s) on which each Plaintiff experienced the alleged problems with the Engine; (3) the date on which each Plaintiff presented his or her vehicle for service, or contacted Ford about the problem[4]; (4) at what mileage the vehicles experienced the alleged problems; (5) the statements actually seen or heard by each Plaintiff on which they allegedly relied, or which otherwise form the basis of their consumer fraud claims; (6) whether the repairs each Plaintiff did receive were paid for by warranty or if Plaintiffs paid out of pocket; or (7) the contracts and/or warranties on which Plaintiffs base their breach of warranty and breach of contract claims.

Although they insist that Defendant does not need this missing information, Plaintiffs overplay their hand. With regard to the warranties at issue, Plaintiffs do not allege the date of purchase, whether the vehicles were purchased new or used, or the terms of the warranty or contract applicable to the Class Vehicles. But a manufacturer's liability for breach of an express warranty "derives from, and is measured by, the terms of that warranty." *Cipollone v. Ligget Group, Inc.*, 505 U.S. 504, 525 (1992). Plaintiffs instead persist in quoting one passage from one specific warranty (that of the 2012 Ford F-150) even though five of the 26 Plaintiffs, and presumably many more within the purported class, purchased other vehicles. (*See Am. Compl.*, ¶¶ 198 (2010 Ford Taurus SHO), 225 (2011 Ford F-150), 554 (2011 Ford F-150), 600 (2011 Ford Taurus SHO) and 888 (2011 Ford F-150 FX4)). Plaintiffs do not attempt to allege the mileage of the various vehicles when the problems first occurred, despite the fact that they admit that Ford's warranties only lasted five years or 60,000 miles. (*Am. Compl.*, ¶¶ 2, 8, 119). Indeed, Plaintiffs can only suggest that because Ford generally issues a "five-year/60,000 mile warranty for its vehicles' EcoBoost engines," it is "plausible at the very least that the EcoBoost

---

[4] Plaintiffs' only reference to a specific date for contacting Ford appears in regard to Plaintiff Gerald Macy's sending of an email to the "Ford Customer Relationship Center" in "January 2012." (*Am. Compl.*, ¶ 102).

engine defect alleged in the Complaint existed for every Plaintiff during their respective vehicle's warranty period." (Doc. 35 at 47). But without further factual allegations,[5] this is precisely the sort of speculative pleading that the Supreme Court has disallowed: "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In short, without "specifically alleg[ing] that [they] experienced problems during the period covered by warranty," Plaintiffs generalized pleadings are insufficient and must fail. *Luppino v. Mercedes-Benz USA, LLC*, No. CIV. 09-5582, 2010 WL 3258259, at *5 (D.N.J. Aug. 16, 2010).

Plaintiffs attempt to cure the deficiencies of their Amended Complaint by arguing that, in fact, the date and mileage of the first defect experience is "irrelevant" because their theory is "that Ford breached its warranties by providing Class Vehicles that were defective at the point of sale." (Doc. 35 at 35). But this theory of liability has been roundly rejected by courts that have considered it, and cannot save Plaintiffs' deficient pleading. *See, e.g.*, *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986) ("virtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a 'latent defect' that existed at the time of sale or during the term of the warranty. . . . Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. . . . A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage."); *In re*

---

[5] Indeed, the Amended Complaint does not even explain which of the various warranties contained the Ford New Vehicle Limited Warranty is at issue here. Only in their Response do Plaintiffs specify the 5 year/60,000 mile powertrain warranty. But "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *see also Hill v. Ohio State Univ. T & L*, No. 2:12-CV-984, 2013 WL 2354069, at *4 (S.D. Ohio May 29, 2013) ("Because none of these allegations are in the Amended Complaint, the Court cannot consider them as informing the motion to dismiss.").

*Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *3 (N.D. Cal. Mar. 12, 2014) (recognize "[t]he general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed," and noting that Ford had "persuasively argue[d] that a majority of states have rejected similar latent defect claims."); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (Every manufactured item is defective at the time of sale in the sense that it will not last forever."); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995).

     Equally as important, Plaintiffs have not alleged even one instance of Ford refusing to cover any problems discovered in the Class Vehicles. Ford did not warranty that its products would be free of defects; rather, it promised that it would "without charge, repair, replace or adjust" parts that fail or malfunction. (*Ford 2012 Model Year Warranty Guide*, Doc. 35-4 at 10). Plaintiffs do not argue that Ford has failed to honor these terms, since, in their view, "this is not the crux of their claims"; instead, Plaintiffs maintain that Ford breached its warranties because it "has found no effective repair" for the alleged defect. (Doc. 35 at 37-38). Case law, both in the Sixth Circuit and in our sister Circuits, makes clear that this is not sufficient to state a claim for relief. *See, e.g.*, *Admiral Const. & Maint., Inc. v. Cummins, Inc.*, 527 F. App'x 499, 502 (6th Cir. 2013) (per curiam) ("the bare fact that a complex product required some service is insufficient to establish breach"; rather, the manufacturer's "repeated coverage of repairs shows that it did honor the warranty.") (internal citation omitted); *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) ("plaintiffs' failure to allege that they experienced a defect within the warranty period of the three years or 36,000 miles is fatal."); *Nobile v. Ford Motor Co.*, No. CIV.A. 10-1890, 2011 WL 900119, at *4 (D.N.J. Mar. 14, 2011) (finding that plaintiffs failed to plead breach of warranty where the complaint did not state that plaintiffs "were not compensated

for repairs made on their transmission while covered by the express warranty.").

Nor can Plaintiffs find succor in their repeated but surpassingly vague references to Ford's advertisements and promotional materials. Plaintiffs insist that they saw or heard, on "numerous occasions," advertisements that touted the safety, reliability, and fuel savings of the Engine, but cannot point to any the specific language of any promotion or advertisement, much less one that created an express warranty obligation on the part of Ford. Yet unless Ford made specific representations about the product at issue, which constituted more than mere opinion or "puffery," Plaintiffs' resort to Ford's advertisements is futile. *See, e.g.*, *Falcon Equip. Corp. v. Courtesy Lincoln Mercury, Inc.*, 536 F.2d 806, 809 (8th Cir. 1976) (no express warranty created unless the seller makes specific representations about the product being sold).

### B.     Rule 9(b)

In addition, Plaintiffs have failed to meet the heightened pleading requirements of Rule 9(b). It is well-settled that any claim sounding in fraud – not just those alleging a claim of fraud – must meet Rule 9(b)'s pleading standard. *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 752-53 (6th Cir. 2012) ("In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of the claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).") (quotation omitted); *Se. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) ("in any complaint averring fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.) (quotation omitted); *Ferron v. SubscriberBase Holdings, Inc.*, No. 2:08-CV-760, 2009 WL 650731, at *5 (S.D. Ohio Mar. 11, 2009) ("Rule 9(b) is not limited to claims of common law fraud or claims which include fraud as one of the elements. Rather, the heightened pleadings requirements apply to "averments of fraud" or "claim[s] that sounds in fraud—in other

17

words, one[s] that [are] premised upon a course of fraudulent conduct.") (quoting *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir.2007)). In order to comply with Rule 9(b)'s requirements, Plaintiffs must at a minimum "allege the time, place and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005) (quotation omitted). Specifically, the plaintiff must: "(1) point to a particular allegedly fraudulent statement; (2) identify who made the statement; (3) plead when and where the statement was made; and (4) explain what made the statement fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 253 (6th Cir. 2012).

Plaintiffs here have failed completely to comply with the mandate of Rule 9(b). Plaintiffs do not explain when they saw the advertisements or representations in question, how these representations are connected to Plaintiffs' transactions, in what way each Plaintiff relied on those representations, or why the advertisements in question are false. With regard to claims of omission by Ford, Plaintiffs do not reveal what information should have been disclosed by Ford that would have made any difference in their purchase decisions, when Ford knew that information, or when Plaintiffs made their purchases.[6] Plaintiffs do not attempt to explain what advertisements each Plaintiff saw or relied on, resorting instead to generalized allegations and the repeated assertion that "[a]lthough [each Plaintiff] cannot recall the specifics of the many Ford advertisements and other publications they saw before they purchased their [Class Vehicle], they recall that safety and reliability were frequent elements in the advertisements." (*See, e.g.*, *Am. Compl.*, ¶ 19); *compare Belville v. Ford Motor Co.*, No. CIV.A. 3:13-6529, 2014 WL 1330839, at *12-13 (S.D.W. Va. Mar. 31, 2014) (holding that allegations that Plaintiffs "do not

---

[6] Claims for fraudulent omission generally require "that plaintiffs plead the type of facts omitted, the place in which the omission should have appeared, and the way in which the omitted facts made the defendant's affirmative representations misleading." *Morris v. Wachovia Sec., Inc.*, 277 F. Supp. 2d 622, 645 (E.D. Va. 2003).

recall the specifics of the many . . . advertisements [they saw], but that safety and reliability were very frequent themes" fail satisfy Rule 9(b), since "[b]road allegations that there were advertisements and other statements over several years—without identifying those advertisements and statements with particularity—is simply insufficient under the Rule.").

Plaintiffs also fail to explain how or when Ford knew of the alleged defects, other than by resort to the TSBs issued by Ford. But more is required to plead knowledge. *See, e.g.*, *Alban v. BMW of N. Am.*, No. CIV. 09-5398, 2011 WL 900114, at *12 (D.N.J. Mar. 15, 2011) ("as a practical matter, the Court is hesitant to view technical service bulletins, or similar advisories, as potential admissions of fraudulent concealment of a defect. Such advisories are generally the result of consumer complaints that cause a manufacturer to investigate, diagnose, and remedy a defect in one of its products. Accepting these advisories as a basis for consumer fraud claims may discourage manufacturers from responding to their customers in the first place."); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 816 (S.D. Ohio 2012) (finding that a TSB could be sufficient to support a claim, when combined with other allegations of knowledge on the part of the manufacturer, such as numerous consumer complaints, aggregate data collected from dealers, pre- and post-release testing data, and evidence of standard industry practice).

IV. CONCLUSION

For the reasons states above, Defendant's Motion (Doc. 31) is **GRANTED**. The case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

    s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 3, 2014**